**Opinion filed April 22, 2010**



In The

# Eleventh Court of Appeals

————

No. 11-09-00305-CV

————

**ERROL C. ANDERSON, M.D., Appellant**

**V.**

**JESSICA GONZALEZ, INDIVIDUALLY AND AS REPRESENTATIVE OF THE ESTATE OF DAISY SILVAS GONZALEZ, DECEASED, Appellee**

**On Appeal from the 358th District Court**

**Ector County, Texas**

**Trial Court Cause No. D-124,393**

**O P I N I O N**

This is an accelerated interlocutory appeal in a health care liability suit. In one issue, appellant, Errol C. Anderson, M.D., complains that the trial court abused its discretion in overruling his objections to the qualifications of the plaintiff's expert and in finding the plaintiff's expert report sufficient under the Medical Liability Act.[1] We affirm.

---

[1]TEX. CIV. PRAC. & REM. CODE ANN. §§ 74.001–.507 (Vernon 2005 & Supp. 2009).

*Background Facts*

Jessica Gonzalez, individually and as representative of the estate of Daisy Silvas Gonzalez, deceased, sued Dr. Anderson for the wrongful death of Daisy. Daisy was born prematurely and was admitted to the Neonatal Intensive Care Unit. In order to help Daisy digest her food, a PICC line was placed. A PICC line is a long flexible tube inserted into the vein of the arm and then threaded to the superior vena cava, a major vein near the heart. A PICC line is used to distribute nutrients, fluids, or drug treatment directly into the bloodstream. To confirm the proper placement of the PICC line, a chest X-ray was ordered. Dr. Anderson read Daisy's chest X-ray and stated that the PICC line was properly placed. The PICC line was used to administer total parenteral nutrition (TPN). Four days later, Daisy suffered a cardiac arrest and died.

Gonzalez alleges that Dr. Anderson's failure to determine that the PICC line was improperly placed resulted in Daisy's death. Gonzalez filed the expert report and curriculum vitae of Randall M. Patten, M.D. Dr. Anderson objected to Dr. Patten's expert report stating that it was insufficient under Section 74.351(a) and asking that the cause be dismissed. After a hearing, the trial court found that the expert report was sufficient.

*Standard of Review*

We review a trial court's determination on the sufficiency of an expert report in a health care liability claim for an abuse of discretion. *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 875 (Tex. 2001). A trial court abuses its discretion when it acts without reference to any guiding rules or principles or acts in an arbitrary or unreasonable manner. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985). We may not substitute our own judgment for the trial court's judgment. *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex. 1992). When reviewing the adequacy of an expert report, the only information relevant to the inquiry is the information contained within the four corners of the document. *Bowie Mem'l Hospital v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002). We cannot fill in gaps in an expert report by drawing inferences or guessing as to what the expert likely meant or intended. *In re McAllen Med. Ctr., Inc.*, 275 S.W.3d 458, 463 (Tex. 2008); *Austin Heart, P.A. v. Webb*, 228 S.W.3d 276, 279 (Tex. App.—Austin 2007, no pet.).

*Texas Medical Liability Act*

Within 120 days of filing a health care liability claim, a plaintiff must serve an expert report with the expert's curriculum vitae to each defendant against whom a liability claim is asserted. Section 74.351(a). An expert report is defined as:

> [A] written report by an expert that provides a fair summary of the expert's opinions as of the date of the report regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed.

Section 74.351(r)(6).

A defendant may file a motion challenging the adequacy of the report. Section 74.351(*l*). The trial court shall grant the motion if it finds, after a hearing, that the report does not represent an objective good faith effort to comply with the definitions of the expert report. *Id.* While an expert report need not marshal all of the plaintiff's proof, it must provide a fair summary of the expert's opinions as to the applicable standard of care, the manner in which the standard of care was breached, and the causal relationship between the breach and the injury. *Palacios*, 46 S.W.3d at 878. To constitute a good faith effort, the report must discuss the standard of care, breach, and causation with sufficient specificity to inform the defendant of the conduct the plaintiff has called into question and to provide a basis for the trial court to conclude that the claims have merit. *Jernigan v. Langley*, 195 S.W.3d 91, 93 (Tex. 2006).

A person is qualified to give expert testimony concerning the causal relationship between the damages claimed and the alleged departure from the applicable standard of care only if the person is a physician and is otherwise qualified to render opinions on that causal relationship under the Texas Rules of Evidence. Section 74.351(r)(5)(C). To be qualified under the Texas Rules of Evidence, an expert must have knowledge, skill, experience, training, or education regarding the specific issue before the court that would qualify the expert to give an opinion on that particular subject. *Broders v. Heise*, 924 S.W.2d 148, 153 (Tex. 1996). When a party can show that a subject is substantially developed in more than one field, testimony can come from a qualified expert in any of those fields. *Id.* at 154. An expert report authored by a person who is not qualified to testify cannot constitute an adequate report. *Collini v. Pustejovsky*, 280 S.W.3d 456, 462 (Tex. App.—Fort Worth

3

2009, no pet.); *Ehrlich v. Miles*, 144 S.W.3d 620, 624-26 (Tex. App.—Fort Worth 2004, pet. den'd). The proper inquiry concerning whether a doctor is qualified to testify is not his area of practice but his familiarity with the issues involved in the claim before the court. *Estorque v. Schafer*, 302 S.W.3d 19, 26 (Tex. App.—Fort Worth 2009, no pet.); *Collini*, 280 S.W.3d at 464. A physician who is not of the same school of medicine may be competent if he has practical knowledge of what is usually and customarily done by a practitioner under circumstances similar to those confronting the defendant. *Broders*, 924 S.W.2d at 152-53.

## *The Report*

Gonzalez's expert, Dr. Patten, is a board certified physician in radiology. At the time he authored his report, Dr. Patten was the chief radiologist with the Northwest Radiology Group. He has been a professor of radiology at the University of Colorado School of Medicine and a clinical associate professor of radiology at the University of Washington School of Medicine. Dr. Patten is on the active medical staff at Providence St. Peter Hospital, and he is a member of the Radiological Society of North America, the American Roentgen Ray Society, and the American College of Radiology. On a daily basis, Dr. Patten is called upon "to interpret x-ray film studies such as those performed for Daisy Gonzale[z] by Errol C. Anderson, M.D." He has routinely been asked to determine the radiological practice of the proper placement of a PICC line.

In his report, Dr. Patten stated that he reviewed Daisy's medical records, the X-ray films performed on Daisy, and the autopsy report. Daisy's medical records showed that Dr. Anderson's X-ray report stated that the PICC line "has been inserted and terminates under the medial clavicle." Dr. Ancerson's chest X-ray report gave no indication that the PICC line was improperly placed, and later reports by Dr. Anderson did not mention the placement of the PICC line. The autopsy revealed that the tip of the PICC line was actually located in the right ventricle of Daisy's heart, "terminating on the epicardial surface, causing a 'mechanical disruption' of the anterior-lateral right ventricle." From the autopsy report, Dr. Patten determined that Daisy died "due to a pericardial effusion secondary to a PICC line with leakage of TPN into the pericardium. The mechanism of death was cardiac tamponade."

Dr. Patten stated that the standard of care requires a radiologist interpreting a chest X-ray for proper PICC line placement to specifically and accurately identify the placement of the PICC line

4

and to inform the treating physician either that the line is properly positioned or that the line is not properly positioned. The standard of care also requires that the radiologist continue to assess the placement of the PICC line on any subsequent chest X-rays. Dr. Patten, in his reports, stated that Dr. Anderson breached the standard of care when he reported that the PICC line "terminate[d] under the medial clavicle" when review of the images revealed that the tip of the PICC line was actually within the heart. Dr. Patten also stated that Dr. Anderson further breached the standard of care when he failed to mention the placement of the PICC line in his review of subsequent chest X-rays.

Dr. Patten concludes in his report that this breach of the standard of care proximately caused Daisy's death. In his report, Dr. Patten stated:

> Based upon reasonable medical probability, the above-noted deviations from the accepted standard of care resulted in and are a proximate cause of Daisy Gonzalez's untimely death.

> The multiple breaches of the applicable standards of care by Dr. Anderson allowed the misplaced PICC line to cause cardiac tamponade which compressed Daisy's heart to the point of cardiac arrest and death.

> Specifically, Dr. Anderson's failure to recognize the improper placement of the PICC line that is evident in the chest x-ray taken to confirm the PICC line placement on 09/21 allowed the tip of the PICC line that was improperly pressing against the wall of the right ventricle in Daisy's heart to disrupt the ventricular wall. Dr. Anderson's breach of the standard of care then allowed the TPN solution to go into the pericardial space and thus cause the cardiac tamponade with resulted in Daisy's death. Had Dr. Anderson not breached and instead met the required Standards of Care, the improper placement of the PICC line would have been detected and corrected prior to causing damage to Daisy's heart, thus saving her life.

*Analysis*

Dr. Anderson argues that Gonzalez's expert is not qualified to render an opinion on the cause of Daisy's cardiac tamponade, cardiac arrest, or the cause of death of a premature newborn because his report and accompanying curriculum vitae indicate no experience, training or knowledge in the area of cardiac tamponade or cardiac arrest. Dr. Anderson argues that the specific issue before the court is the cause of the cardiac tamponade, cardiac arrest, or cause of death in a premature newborn. We disagree.

5

This case is analogous to *Mosely v. Mundine*, 249 S.W.3d 775 (Tex. App—Dallas 2008, no pet.). In *Mosely*, an emergency room physician misread X-ray films of a patient being treated for injuries arising out of a traffic accident. The physician read the film as normal even though the X-ray showed a small tumor on the patient's lung. The patient was released. Two years later, the tumor was found on another X-ray film. The patient sued the initial emergency room doctor alleging that, had the X-ray film been properly read and the tumor discovered at the first emergency room visit, her treatment and prognosis would have been better. The plaintiff filed an expert report authored by an emergency room physician. The defendant doctor filed objections to the report, stating that the emergency room doctor was not qualified to give opinions on the treatment and prognosis for cancer. The Dallas Court of Appeals explained that the conduct causing the plaintiff's injuries related to the ability of the emergency room physician to interpret a routine chest X-ray and indentify an abnormality, not the diagnosis and treatment of cancer. *Mosely*, 249 S.W.3d at 779.

As in *Mosely*, the causation issue in this case relates to the duty of Dr. Anderson to recognize potential harm and take appropriate action. In her petition, Gonzalez alleges that Dr. Anderson's negligence arises from his failure to identify the improper placement of the PICC line in his interpretation of the X-rays. Dr. Patten did not determine the cause of Daisy's death. He reviewed the autopsy report and her medical records in determining the cause of her death. An expert may rely on the opinions of other individuals who have rendered reports or diagnoses. *Kelly v. Rendon*, 255 S.W.3d 665, 676 (Tex. App.—Houston [14th Dist.] 2008, no pet.); *Cresthaven Nursing Residence v. Freeman*, 134 S.W.3d 214, 234 (Tex. App.—Amarillo 2003, no pet.); *see also* TEX. R. EVID. 703 (stating that an expert can base an opinion on reasonably reliable data). Dr. Patten concluded that the failure to recognize the improper placement of the PICC line led to TPN being distributed into Daisy's heart and, thus, causing cardiac arrest.

Dr. Patten does not have to be an expert in cardiology. In *Livingston v. Montgomery*, 279 S.W.3d 868 (Tex. App.—Dallas 2009, no pet.), an obstetrician/gynecologist provided an expert opinion on the neurological injuries a baby suffered during labor and delivery. The court held that an obstetrician in his every day practice of managing labor and delivery has the experience, knowledge, and training to opine on the complications that can stem from labor and delivery, including neurological injuries. *Id.* at 877. Similarly, Dr. Patten performs the type of review of chest X-rays

6

that Dr. Anderson performed in this case on a daily basis. This practice gives Dr. Patten the experience, knowledge, and training regarding injuries that can occur when an improperly placed PICC line is not identified.

Dr. Patten has experience, knowledge, and training in the area of determining proper placement of a PICC line. He is an experienced radiologist, has authored numerous articles, has taught in the area of radiology, and has performed this type of analysis of X-ray films on a daily basis. His report outlines the standard of care for a radiologist, how Dr. Anderson breached that standard of care, and how that breach caused the damage to Daisy's heart. The expert report constitutes a good faith effort by Gonzalez to inform Dr. Anderson of the conduct she has called into question and to provide a basis for the trial court to conclude that the claims have merit. The trial court did not abuse its discretion in finding the expert report sufficient under Section 74.351(a). We overrule Dr. Anderson's issue on appeal.

*Conclusion*

We affirm the order of the trial court.


RICK STRANGE

JUSTICE


April 22, 2010

Panel consists of: Wright, C.J.,
McCall, J., and Strange, J.

7