**Affirmed and Memorandum Opinion filed January 25, 2024.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-22-00874-CV

---

## MCKINNEY PODIATRIC ASSOCIATES, P.A.; COASTAL FOOT & ANKLE ASSOCIATES, P.A.; AND HINA SHAFQAT HASSAN, DPM, Appellants

## V.

## ZEENETHIA JACKSON, Appellee

---

**On Appeal from the 333rd District Court
Harris County, Texas
Trial Court Cause No. 2021-27950**

---

## M E M O R A N D U M   O P I N I O N

This is an interlocutory appeal from the denial of a motion to dismiss in a health care liability lawsuit based on the adequacy of the plaintiff's expert report. Zeenethia Jackson sued appellants McKinney Podiatric Associates, P.A.; Coastal Foot & Ankle Associates, P.A.; and Hina Shafqat Hassan, DPM, alleging Hassan committed medical malpractice and McKinney and Coastal were responsible parties under the doctrine of respondeat superior. In two issues, appellants contend

the trial court erred in denying their motion to dismiss because the expert report inadequately described the standard of care and Hassan's alleged breach thereof as well as the causal link between Hassan's conduct and Jackson's injuries. We affirm.

## *Procedural History*

Jackson filed suit against appellants alleging that when she went to see Hassan, a podiatrist, for pain in Jackson's left big toe, Hassan misdiagnosed the cause of the pain and subsequently performed an unnecessary surgery, which caused additional pain and the necessity of corrective surgery. As required by Texas Civil Practice and Remedies Code section 74.351, Jackson served appellants with an expert report by podiatrist Timothy Short. After appellants filed objections to the adequacy of this report, the trial court found the report insufficient to meet the requirements of section 74.351 and gave Jackson 30 days to cure the deficiencies. Jackson then filed an amended report by Short. Appellants again objected and filed a motion to dismiss, arguing the second report was again deficient. Jackson responded by arguing the sufficiency of the report and also suggesting that appellants had waived their arguments by having engaged in discovery. The trial court denied appellants' objections and their motion to dismiss, stating in the order denying the motion that the amended report was sufficient for purposes of section 74.351.

## *The Report*

Short begins his amended report by providing his extensive qualifications, explaining in part that he has taught "the exact technique to use in deciding when it is appropriate to recommend and perform the exact surgical procedures at issue in this case." He further represented that he had "read and deciphered films and radiographs to determine the correct bunion angle hundreds, if not thousands of

2

times" and teaches this to residents. Short then lists the various medical records he reviewed in making his report and noted that they are the type of records medical experts rely on in forming their opinions.

Regarding the facts of this case, Short explained that Jackson first saw Hassan on May 6, 2019, "complaining of pain in both great toe joints." At that appointment, Hassan diagnosed Jackson with (1) Hallux Valgus bilateral lower extremity, (2) Capsulitis bilateral 2nd MPJ, (3) Unstable 1st TMTJ bilateral, (4) Metatarsus Varus bilateral, and (5) Metatarsus Primus Elevatus bilateral. Hassan also provided Jackson with a steroid shot in her left foot at that appointment. Jackson returned on May 20, at which time Hassan reviewed the results of the film radiographs with Jackson and discussed possible surgical and orthotic courses of treatment. Jackson reported that the steroid injection had provided some relief. According to Short, Hassan recorded a bunion angle for Jackson's left great toe of 18 degrees, but Short said that the evidence supported only a bunion angle of 5 to 10 degrees.

When Jackson returned on June 17, she signed a surgical consent and three surgical procedures were discussed. "Despite the previous success of the steroid injection, further injection therapy or orthotic therapy options were not discussed or explored." Hassan thereafter performed two surgical procedures on Jackson's left foot on July 15: (1) first tarsometatarsal joint arthrodesis, and (2) modified McBride bunionectomy. Short noted that both the pre-procedure and the post-procedure diagnoses were the same: left foot first tarsometatarsal joint instability and hallux valgus deformity. Post-operative notes showed Jackson's condition to be stable on July 22 and August 5, but Short indicated that the notes appeared to have been revised at a later time.

In October and December 2019, Jackson made several visits to another foot

and ankle specialist for "non-union/lack of joint fusion of the surgical site," and she signed a consent with this other doctor for corrective surgery. On January 16, 2020, the doctor performed a "lapiplasty and calcaneal bone graft to revise the non-union site." According to Short, "[t]his procedure was necessary solely because of the negligence in recommending and performing the procedure in the first place by Dr. Hassan." Around three months later, Jackson was still complaining of pain, but a CT scan showed healing at the surgical site.

Regarding the standards of care, Short opined that a reasonably prudent podiatrist under these circumstances (1) would have accurately measured Jackson's bunion angle; (2) would not have performed the surgical procedures without either one of two criteria being present: a bunion angle of 18 degrees or higher or the patient experiencing severe arthritis; and (3) would not have performed the procedures even if one or both of those criteria was present without first exhausting all conservative options for treatment, such as further corticosteroid shots, orthotics, and new shoes.

In discussing the alleged breaches of the standards of care, Short began by asserting again that Hassan failed to accurately measure the bunion angle by reading the X-rays to show a severe bunion deformity of 18 degrees when the actual angle was normal, around 5 to 10 degrees. He then alleges that this inaccurate reading of the bunion angle caused Hassan to recommend "an unindicated and unnecessary surgery." And, ultimately, Hassan performed an arthrodesis—"surgical immobilization of a joint by fusion of the adjacent bones"— that should be reserved for cases of severe bunion angles or severe arthritis, neither of which Jackson ever experienced. Short also noted that Hassan recommended and performed the surgical procedure without first exhausting conservative treatment options in violation of the standards of care.

4

Short began his statement regarding causation by saying,

> [w]ithin reasonable medical probability, the sole proximate cause of the non-union and subsequent surgeries and pain and discomfort related thereto experienced by [Jackson] is the surgical procedures performed upon her by Dr. Hassan in July of 2019, and without the surgical procedures ever being performed, [Jackson] would not have experienced the nonunion/lack of joint fusion of the surgical site.

Short further explained that it was foreseeable at the time the procedure was recommended and performed that within reasonable medical probability, the procedure would result in the non-union/lack of joint fusion because the procedure was "designed to alter a severe bunion angle into a normal one . . . and [Jackson's] bunion angle was normal to begin with." "Performing this procedure on a patient with a normal bunion angle will, within reasonable medical probability, result in exactly what happened here—a non-union/lack of joint fusion of the surgical site."

According to Short, there was "no other possible cause of this injury, other than Dr. Hassan's negligence," and had Hassan followed the standards of care, she would never have recommended or performed the procedure and, within reasonable medical probability, Jackson "would never have . . . experienced the non-union/lack of joint fusion of the surgical site and the subsequent surgical procedures and severe pain and discomfort associated therewith." Short concluded that a podiatrist of ordinary prudence would have anticipated the danger caused by the negligent acts and omissions and that absent those acts or omissions, the harm would not have occurred, there being no other potential cause.

### *Standards of Review*

For a health care liability claim, a claimant must serve an expert report on each defendant early in the litigation or risk dismissal of the claim. *See* Tex. Civ. Prac. & Rem. Code § 74.351(a)–(b); *E.D. ex rel. B.O. v. Tex. Health Care,*

5

*P.L.L.C.*, 644 S.W.3d 660, 664 (Tex. 2022). The expert report must "provide a fair summary of the expert's opinions . . . regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed." Tex. Civ. Prac. & Rem. Code § 74.351(r)(6). Regarding vicarious liability claims and section 74.351 expert reports, "[w]hen a party's alleged health care liability is purely vicarious, a report that adequately implicates the actions of that party's agents or employees is sufficient." *Gardner v. U.S. Imaging, Inc.*, 274 S.W.3d 669, 671–72 (Tex. 2008); *accord Obstetrical & Gynecological Assocs. v. McCoy*, 283 S.W.3d 96, 103 (Tex. App.—Houston [14th Dist.] 2009, pet. denied) (applying *Gardner* to a professional association).

When defendants challenge the adequacy of a report, the trial court must grant a motion to dismiss "if it appears to the court . . . that the report does not represent an objective good faith effort to comply with the definition of an expert report." Tex. Civ. Prac. & Rem. Code § 74.351(l); *Baty v. Futrell*, 543 S.W.3d 689, 693 (Tex. 2018). An expert report satisfies this "good-faith effort" requirement if the report discusses the standard of care, breach, and causation with sufficient specificity to (1) inform the defendant of the specific conduct called into question and (2) provide a basis for the trial court to conclude that the claims have merit. *See Baty*, 543 S.W.3d at 693–94; *Jelinek v. Casas*, 328 S.W.3d 526, 539 (Tex. 2010). Although a report need not marshal the plaintiff's proof, it must provide more than conclusory statements concerning the applicable standard of care, breach, and causation. *See Baty*, 543 S.W.3d at 693; *Jelinek*, 328 S.W.3d at 539, 540 n.9. Regarding causation, a report must explain "how and why the breach caused the injury based on the facts presented." *Jelinek*, 328 S.W.3d at 540. The purpose of the expert-report requirement is to deter frivolous claims, not to dispose

6

of claims regardless of their merit. *Scoresby v. Santillan*, 346 S.W.3d 546, 554 (Tex. 2011).

A court's inquiry into the adequacy is confined to the four corners of the report, taken as a whole. *E.D.*, 644 S.W.3d at 664. The necessary information must be found in the text of the report itself; omissions cannot be supplied by inference. *Hall v. Davies*, 598 S.W.3d 803, 807 (Tex. App.—Houston [14th Dist.] 2020, no pet.) (citing *Scoresby*, 346 S.W.3d at 555–56).

We review a trial court's denial of a motion to dismiss for an abuse of discretion. *Bailey v. Amaya Clinic, Inc.*, 402 S.W.3d 355, 361 (Tex. App.—Houston [14th Dist.] 2013, no pet.); *see also Baty*, 543 S.W.3d at 693. A trial court abuses its discretion if it acts in an unreasonable or arbitrary manner or without reference to any guiding rules or principles. *Bailey*, 402 S.W.3d at 361. Under this standard, "close calls must go to the trial court." *E.D.*, 644 S.W.3d at 664 (alteration and quotation omitted).

### *Standards of Care and Breach*

In their first issue, appellants contend that the expert report inadequately describes the applicable standards of care and alleged breaches by Hassan.[1] Several of appellants' arguments under this issue are premised on our consideration of both Short's second, amended report and his original report. Appellants urge that the

---

[1] Jackson initially argues that appellants waived their arguments on appeal because they failed to address one of the grounds for denying the motion to dismiss contained in Jackson's response to the motion, citing *Miller v. Debo Homes, LLC*, No. 14-15-00004-CV, 2016 WL 5399507, at *3–4 (Tex. App.—Houston [14th Dist.] Sept. 27, 2016, no pet.) (mem. op.), *et. al*. Jackson argued in her response that the motion should be denied both because the expert report was adequate and because appellants had engaged in discovery. Appellants only challenged the former argument in their original appellate brief. In denying the motion to dismiss, however, the trial court specifically found that the expert report was adequate. The court made no mention of the ground premised on discovery. We will therefore consider appellants' issues regarding the adequacy of the report.

second report was actually a supplemental report rather than an amended report, but this is not correct. Generally, an amended expert report served after the trial court grants a thirty-day extension supersedes the initial report filed by the claimant. *Durrani v. Ayala*, No. 14-19-00950-CV, 2021 WL 97813, at *5 (Tex. App.—Houston [14th Dist.] Jan. 12, 2021, no pet.) (mem. op.); *Clavijo v. Fomby*, No. 01-17-00120-CV, 2018 WL 2976116, at *7 n.9 (Tex. App.—Houston [1st Dist.] June 14, 2018, pet. denied) (mem. op.). Courts have, however, considered both reports when circumstances indicate that supplementation was intended and not amendment or replacement. *See, e.g.*, *Packard v. Guerra*, 252 S.W.3d 511, 517 (Tex. App.—Houston [14th Dist.] 2008, pet. denied) (considering refiled original reports along with supplemental reports). Here, Short notes in the first sentence of his amended report that it is indeed an amended report, and his amended report is largely the same as his original report except for some additions and deletions. We will therefore only consider the amended report. *See E.D.*, 644 S.W.3d at 664 (explaining that appellate review of the adequacy of an expert report should be limited to the four corners of that report). Accordingly, we will not further address appellants' arguments premised on consideration of both reports.

Appellants additionally assert generally that Short's statements regarding measurement of the bunion angle, the question of whether Jackson had severe arthritis, and the need to exhaust conservative treatment options were vague and ambiguous. Specifically, appellants argue that Short needed to describe in more detail what Hassan did incorrectly and what she should have done differently. In support, appellants cite the San Antonio court's opinion in *Lawton v. Joaquin*, No. 04-13-00613-CV, 2014 WL 783340 (Tex. App.—San Antonio Feb. 26, 2014, pet. denied) (mem. op.). The expert in *Lawton* opined that because the patient experienced substantial blood loss from her abdominal wall during surgery and had

8

no preexisting conditions that would explain the loss, something must have gone wrong during the surgery. *Id*. at \*2. The expert further explained that the standard of care required the defendant surgeon to maintain a sufficient blood supply to the abdominal wall during surgery, but the expert was unable to say what actually went wrong. *Id*. at \*2–3. The court of appeals reversed the trial court's denial of the defendant's motion to dismiss. *Id*. at 4.

*Lawton*, however, is distinguishable from the present case. As set out in detail above, Short specifically explained that the standard of care required Hassan to properly measure Jackson's bunion angle, not perform the surgical procedures absent a bunion angle of 18 degrees or more or the presence of severe arthritis, and even if one of those conditions occurred, not perform the procedures without first exhausting all conservative options for treatment. And Short further opined that Hassan breached those standards by improperly measuring the bunion angle, recommending and performing the unindicated and unnecessary procedures, and failing to exhaust conservative treatment options. Short was therefore more specific regarding the defendant doctor's conduct than was the expert in *Lawton* and did not simply aver that something must have gone wrong.

Regarding the measuring of the bunion angle, appellants further insist that Short needed to say more than merely stating that she misread or miscalculated the angle. We do not agree that more was required from Short at this stage of the proceedings. As discussed above, the expert report needed to provide a "fair summary" of the expert's opinions and demonstrate a "good-faith effort" including enough specificity to inform the defendant of the specific conduct called into question and provide a basis for the trial court to conclude that the claims have merit. *See* Tex. Civ. Prac. & Rem. Code § 74.351(r)(6); *Baty*, 543 S.W.3d at 693–94; *see also Kelly v. Rendon*, 255 S.W.3d 665, 679 (Tex. App.—Houston [14th

9

Dist.] 2008, no pet.) ("[E]xpert reports . . . are simply a preliminary method to show a plaintiff has a viable cause of action that is not frivolous or without expert support."). Short asserted in his report that the standard of care required Hassan to accurately measure Jackson's bunion angle and that Hassan breached this standard by recording a severe bunion angle of 18 degrees when the X-rays revealed only a normal angle of 5 to 10 degrees. This was sufficient to inform Hassan of the conduct being called into question and provide the trial court with a basis to conclude that the claims have merit. *See* Tex. Civ. Prac. & Rem. Code § 74.351(r)(6); *Baty*, 543 S.W.3d at 693–94. Short was not required to provide explicit instructions at this stage regarding how to properly calculate a bunion angle from an X-ray. *See, e.g.*, *Anderson v. Gonzalez*, 315 S.W.3d 582, 586–87 (Tex. App.—Eastland 2010, no pet.) (deeming report adequate where it asserted defendant doctor failed to recognize improper placement of catheter line on chest X-ray).

Appellants also suggest that Short needed to say more regarding the absence of severe arthritis in this case, but Hassan did not diagnose Jackson with severe arthritis, and after reviewing her medical records, Short concurred in this assessment. Short did not need to say more about Jackson not having severe arthritis because there is no disagreement regarding that issue in this case.

Appellants lastly fault Short for not providing more information regarding what conservative treatment options should have been attempted and for how long. Short did list conservative treatment options that should have been considered, and he noted that these options should have been exhausted before resorting to surgery. However, because we conclude that Short's opinions regarding Hassan's failure to correctly measure the bunion angle and recommendation and performance of unindicated and unnecessary surgical procedures were adequate, we need not

10

address the sufficiency of his opinions regarding this alternative, "even if" scenario that Short mentioned. *See Miller v. JSC Lake Highlands Operations, LP*, 536 S.W.3d 510, 516 n.7 (Tex. 2017) (explaining that when one set of opinions was deemed sufficient, appellate court did not need to address sufficiency of additional opinions in expert report); *Certified EMS, Inc. v. Potts*, 392 S.W.3d 625, 632 (Tex. 2013) ("[A]n expert report that adequately addresses at least one pleaded liability theory satisfies the statutory requirements, and the trial court must not dismiss in such a case.").[2] Because the trial court did not abuse its discretion in concluding that Short's report adequately described the applicable standard of care and breach thereof, we overrule appellants' first issue.

### *Causation*

In their second issue, appellants assert that Short's report inadequately links Hassan's alleged breaches of the standards of care to Jackson's injuries. Appellants call the causation section of Short's report over-general and vague, and assert he makes no effort to explain how or why the surgical procedures caused the alleged non-union/lack of joint fusion Jackson suffered, especially since there was no allegation the surgery itself was improperly performed. Appellants also again assert that Short acknowledged that surgery could have been recommended if conservative treatment options had been exhausted. But this argument misunderstands Short's opinions regarding the standards of care, breach, and causation.

As discussed above, Short did not state that the surgical procedures would

---

[2] In their reply brief, appellants suggest that the failure to exhaust conservative treatment options comprised the crux of Short's allegations against Hassan. But it is clear from the report itself that Short viewed exhausting conservative options as necessary before employing the surgical procedures Hassan used only if Jackson was experiencing a bunion angle of 18 degrees or more or severe arthritis. Short averred that these surgical procedures were unindicated and unnecessary in this case regardless of the exhaustion of conservative treatment options.

have been indicated in the event conservative treatment options had been exhausted; he opined that had Jackson been experiencing a severe bunion angle or severe arthritis, the procedures could have been indicated but only after exhausting conservative options. But he also clearly asserted that Jackson did not have severe arthritis or a severe bunion angle, thus the surgical procedures were unindicated and unnecessary regardless of whether conservative treatments options were exhausted. Specifically, regarding causation, Short averred that the procedures Hassan performed would naturally result in the non-union/lack of joint fusion because the procedure was

> designed to alter a severe bunion angle into a normal one . . . and [Jackson's] bunion angle was normal to begin with. Performing this procedure on a patient with a normal bunion angle will, within reasonable medical probability, result in exactly what happened here—a non-union/lack of joint fusion of the surgical site.

According to Short, there was "no other possible cause of this injury, other than Dr. Hassan's negligence," and had Hassan followed the standards of care, she would never have recommended or performed the procedure and Jackson "would never have . . . experienced the non-union/lack of joint fusion of the surgical site and the subsequent surgical procedures and severe pain and discomfort associated therewith." As appellants acknowledge, Short does not assert that the surgical procedures themselves were performed improperly; he is saying that performing the procedures on a patient with a normal bunion angle will result in just what happened here. He says that very clearly.

Nevertheless, appellants suggest that Short needed to go further and explain exactly how the allegedly unnecessary surgery caused the non-union/lack of joint fusion. In support, they cite *Horndeski v. Price*, No. 01-21-00577-CV, 2022 WL 3363951 (Tex. App.—Houston [1st Dist.] Aug. 16, 2022, no pet.) (mem. op.). The

plaintiff in *Horndeski* allegedly developed complications after breast reconstruction surgery performed by the defendant doctor. In the markedly short expert reports, plaintiff's experts opined simply that she was a high-risk candidate for surgery, the surgical procedure performed was not the standard of care for plaintiff's condition, and had the defendant refrained from performing the procedure, the plaintiff would not have suffered injury. *Id.* at *2. The experts did not, however, offer an explanation as to how or why the plaintiff's injuries, which included blisters, pustules, and infections on her skin, were caused by the defendant's conduct, and accordingly, the court of appeals reversed the trial court's order denying the defendant's motion to dismiss. *Id.* at *7–8.

Here, Short offered significantly more information in his report regarding causation than did the experts in *Horndeski*. Instead of simply stating that had the defendant not performed the procedure, the plaintiff likely would not have been injured—as did the *Horndeski* experts—Short explained that unnecessarily performing the surgical procedure Hassan utilized on a patient with a normal bunion angle will and, within reasonable medical probability, did cause a non-union/lack of joint fusion at the surgical site. Although Short could certainly have provided more details, the trial court acted within its discretion in concluding that the report provided a "fair summary" of Short's opinions and demonstrated a "good-faith effort" to inform the defendant of the specific conduct called into question and provide a basis for the trial court to conclude that the claims have merit. *See* Tex. Civ. Prac. & Rem. Code § 74.351(r)(6); *Baty*, 543 S.W.3d at 693–94; *Kelly*, 255 S.W.3d at 679; *see also Abshire v. Christus Health Se. Tex.*, 563 S.W.3d 219, 224 (Tex. 2018) ("[T]he expert need not prove the entire case or account for every known fact; the report is sufficient if it makes 'a good-faith effort to explain, factually, how proximate cause is going to be proven.'") (quoting

13

*Columbia Valley Healthcare Sys., L.P. v. Zamarripa*, 526 S.W.3d 453, 461 (Tex. 2017)). Accordingly, we overrule appellants' second issue.

We affirm the trial court's order.


/s/  Frances Bourliot
     Justice


Panel consists of Justices Wise, Bourliot, and Spain.