**Affirmed as Modified and Opinion Filed February 6, 2024**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-22-00727-CR**

**JUAN FRANCISCO AVILA, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the Criminal District Court No. 1**
**Dallas County, Texas**
**Trial Court Cause No. F-1958617-H**

## MEMORANDUM OPINION

Before Justices Garcia, Goldstein, and Miskel
Opinion by Justice Miskel

Appellant Juan Francisco Avila was convicted of aggravated sexual assault of a child under the age of fourteen years and was sentenced to seventy-five years of imprisonment after a multi-day jury trial. TEX. PENAL CODE § 22.021(a)(2)(B). In three live issues, Avila argues that the trial court erred in (1) admitting the expert testimony of the State's psychologist, which was based on her review of an academic study; (2) admitting the State's Exhibit No. 21 (containing the child's therapy records) over his cumulative hearsay objections and allowing the psychologist to testify to opinions based on her review of the hearsay evidence; and (3) excluding

evidence of Avila's immigration status and additional mitigation evidence at the punishment stage. At oral argument, Avila's counsel withdrew his fourth issue complaining about the jury charge. We modify the judgment to reflect the correct amount of costs awarded against Avila and otherwise affirm the judgment as modified.

## I. BACKGROUND

On September 19, 2019, Avila's young stepdaughter "Deborah"[1] reported to her elementary school counselor that Avila had been sexually abusing her. The counselor phoned police and child protective services to report the outcry. The police took the child for a forensic interview. The Assistant Director of Forensic Services at the Dallas Children's Advocacy Center ("CAC") interviewed the child. Deborah described multiple incidents of sexual abuse Avila committed against her beginning in her third-grade year.

The investigation revealed that Deborah had made an outcry to her mother about the abuse some time before making the September 2019 report to her elementary school counselor. The mother had suspected something was wrong when she caught Avila leaving Deborah's bedroom late one night, in total darkness. The next day the mother asked the child whether Avila had touched her, and Deborah

---

[1] We use an alias to protect the minor's identity.

described how Avila had sexually abused her. The mother called her pastor; the pastor and his wife came to the home and Deborah again detailed the abuse.

Avila was indicted and proceeded to a jury trial where the jury convicted him of aggravated sexual assault of a child under fourteen years of age. TEX. PENAL CODE § 22.021(a)(2)(B). The jury assessed Avila's punishment at seventy-five years' imprisonment. This appeal followed.

## II. THE COMPLAINT ABOUT IRRELEVANT EXPERT TESTIMONY WAS NOT PRESERVED FOR REVIEW

In his first issue, Avila contends that the trial court committed reversible error by admitting irrelevant testimony by the State's psychologist Dr. Doskey at the punishment stage. However, the record reflects that, at the punishment phase, Avila's counsel lodged no objections to the admissibility of the psychologist's testimony and, therefore, preserved no alleged error for our review. TEX. R. APP. P. 33.1(a).

### A. Standard of Review and Applicable Law

Texas Rule of Appellate Procedure 33.1 governs error preservation and requires that a complaint must be "made to the trial court by a timely request, objection, or motion that ... state[s] the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context[.]" TEX. R. APP. P. 33.1(a)(1)(A). Although no "hyper-technical or formalistic use of words or phrases" is necessary to preserve error, the complaining

party must notify the trial judge about what he wants, why he thinks he is entitled to it, and must do so clearly enough for the judge to understand him at a time when the judge is in the proper position to do something about it. *Golliday v. State*, 560 S.W.3d 664, 670 (Tex. Crim. App. 2018). The record must show the trial court ruled on the party's request, objection, or motion, either expressly or implicitly, or refused to rule and that the complaining party objected to the trial court's refusal. TEX. R. APP. P. 33.1(a)(2).

To preserve error in admitting evidence, a party must object each time the alleged inadmissible evidence is offered or obtain a running objection. *Valle v. State*, 109 S.W.3d 500, 509 (Tex. Crim. App. 2003). An error in the admission of evidence is cured where the same evidence comes in elsewhere without objection. *Id.* The requirement of error preservation "generally applies to all complaints except those that involve rules that are 'waivable only' or 'systematic' (or 'absolute') requirements." *London v. State*, 490 S.W.3d 503, 507 (Tex. Crim. App. 2016). "[A]ll other complaints, whether constitutional, statutory, or otherwise, are forfeited by failure to comply with Rule 33.1(a)." *Mendez v. State*, 138 S.W.3d 334, 342 (Tex. Crim. App. 2004).

Our Court of Criminal Appeals has "consistently held that the failure to object in a timely and specific manner during trial forfeits complaints about the admissibility of evidence." *Saldano v. State*, 70 S.W.3d 873, 889 (Tex. Crim. App. 2002). An appellant "must have made a proper and specific objection at the time the

evidence was offered or excluded to preserve his right of review of that evidentiary claim." *Moff v. State*, 131 S.W.3d 485, 489 (Tex. Crim. App. 2004). The alleged error on appeal must comport with the objection made at trial. *Clark v. State,* 365 S.W.3d 333, 339 (Tex. Crim. App. 2012); *Thomas v. State*, 723 S.W.2d 696, 700 (Tex. Crim. App. 1986).

### B. The Request for a Jury Instruction did Not Preserve an Objection to Admissibility

Instead of lodging evidentiary objections, the record reflects that Avila's counsel took Dr. Doskey on *voir dire* about State's Exhibit 22—a summary of a study of the relationship between Adverse Childhood Experiences ("ACEs") and negative health outcomes in adulthood.[2]

In the punishment phase, Avila's counsel cross-examined the State's psychological expert about the study's methodology and conclusions, as well as establishing that Deborah was not included in the ACE study and that personal investigation into Deborah's circumstances would be necessary to assess the actual adult outcomes for Deborah.

---

[2] *See* Vincent J. Felitti, MD, FACP *et al.*, *Relationship of Childhood Abuse and Household Dysfunction to Many of the Leading Causes of Death in Adults. The Adverse Childhood Experiences (ACE) Study*, 14 Am. J. Prev. Med. 245-58 (1998); *see also* Kathleen Wayland*, The Importance of Recognizing Trauma Throughout Capital Mitigation Investigations and Presentations,* 36 Hofstra L. Rev. 923, 927 (2008)*;* Adverse Childhood Experiences (ACEs), Ctrs. for Disease Control & Prevention, https://www.cdc.gov/violenceprevention/aces/about.html/ (last visited February 1, 2024).

After completing his *voir dire* of the State's psychologist expert Dr. Doskey, Avila's counsel stated, "That's all Your Honor. I would ask that the jury be instructed that this is just general information and has nothing to do with the case at hand regarding this child or any prediction of what—if—I'm sorry—any prediction of what the jury has decided upon that occurred would have in her future life." The Court responded, "Request for Instruction is denied. Members of the jury, all evidence presented for you is for your consideration both as to credibility, weight, which means significance or what you're gonna do with it." The trial court admitted State's Exhibit No. 22 into evidence. Avila's counsel did not object to the admission of State's Exhibit No. 22 (the ACE study summary) or Dr. Doskey's testimony relating to that exhibit, and he has not argued on appeal that the trial court abused its discretion when it denied his requested jury instruction. TEX. R. APP. P. 33.1(a)(1), 38.1(i).

On appeal, Avila argues that defense counsel's request for a jury instruction "amounted to an objection" to both the testimony and to Exhibit 22 as irrelevant. However, we conclude that the request for the instruction did not preserve a relevance objection for appellate review. TEX. R. APP. P. 33.1(a)(1)(A); *Golliday v. State*, 560 S.W.3d at 670 (the complaining party must notify the trial judge about the complaint and its basis, and must do so with clarity sufficient for the trial court to understand it at a time when the court can act upon the complaint).

Issue one is decided against Avila.

## III.    THE CAC RECORDS WERE NOT ADMITTED INTO EVIDENCE

In his second issue, Avila argues the trial court erred in admitting State's Exhibit 21—the child's records from the CAC.

We review a trial court's decision to admit an exhibit for an abuse of discretion. *Willover v. State*, 70 S.W.3d 841, 845 (Tex. Crim. App. 2002); *Khoshayand v. State*, 179 S.W.3d 779, 784 (Tex. App.—Dallas 2005, no pet.) (citing, *inter alia*, *Willover v. State* and holding, "[w]e review the trial court's ruling in light of what was before it at the time the ruling was made and uphold the ruling if it is reasonably supported by the record and is correct under any theory of law applicable to the case.").

The trial record reflects that, while Avila acknowledged the business records affidavit proving up Exhibit 21, he proceeded to object on the basis that the CAC records contained unspecified instances of hearsay within hearsay. Avila did not identify any of the particular entries in Exhibit 21 that he asserted constituted cumulative hearsay. The Texas Court of Criminal Appeals has held that, under these circumstances, Avila, as the objecting party, presents nothing for this reviewing court to decide, and the trial court will be deemed to have properly admitted the evidence. *Jones v. State*, 843 S.W.2d 487, 492 (Tex. Crim. App. 1992), overruled on other grounds, *Maxwell v. State*, 48 S.W.3d 196, 200 (Tex. Crim. App. 2001), cert. denied, 507 U.S. 1035 (1993) ("The trial court need never sort through challenged evidence in order to segregate the admissible from the excludable, nor is

–7–

the trial court required to admit only the former part or exclude only the latter part. If the evidence is offered and challenged which contains some of each, the trial court may safely admit it all or exclude it all, and the losing party, no matter who he is, will be made to suffer on the appeal the consequences of his insufficiently specific offer or objection…").

Exhibit 21 contains the statements of the child and her mother relating to therapy provided by the CAC. The record reflects that these statements were made for—and reasonably pertinent to—medical diagnosis or treatment and that they describe medical history, past or present symptoms or sensations, their inception or their general cause and, thus, are expressly excepted from the rule against hearsay. TEX. R. EVID. 803(4). The records do contain other administrative entries, such as comments related to scheduling appointments. The record does not reflect that any of the administrative entries were offered to prove the truth of the matters asserted, and Avila does not identify or analyze any harm related to the administrative entries.

Statements by a suspected victim of child abuse as to the causation and source of the child's injuries are properly admissible under rule 803(4) as express exceptions to the hearsay rule. *Davidson v. State*, No. 05-05-00864-CR, 2006 WL 3020403, at *2-3 (Tex. App.—Dallas June 21, 2005, pet. ref'd) (mem. op., not designated for publication); *Gregory v. State*, 56 S.W.3d 164, 183 (Tex. App.—Houston [14th Dist.] 2001, pet. dism'd); *Beheler v. State*, 3 S.W.3d 182, 189 (Tex. App.—Fort Worth 1999, pet. ref'd). Further, statements made by the parent of an

injured child for purposes of diagnosing or treating the child qualify as an exception under rule 803(4). *Delavega v. State*, No. 05-21-00229-CR, 2022 WL 1564548, at *4 (Tex. App.—Dallas May 17, 2022, no pet.) (mem. op., not designated for publication); *Barnes v. State*, No. 05-16-01184-CR, 2017 WL 5897746, at *6 (Tex. App.—Dallas Nov. 29, 2017, no pet.) (mem. op., not designated for publication); *Sandoval v. State*, 52 S.W.3d 851, 856-57 (Tex. App.—Houston [1st Dist.] 2001, pet. ref'd); *Ponce v. State*, 89 S.W.3d 110, 120 (Tex. App—Corpus Christi 2002, no pet.).

Accordingly, under the circumstances of this case, neither the State nor the trial court had the burden to affirmatively identify TEX. R. EVID. 803(4) as a specific hearsay exception supporting admission of Exhibit 21 when presented with Avila's general and non-specified cumulative hearsay objection. *See also Sewell v. State*, 629 S.W.2d 42, 45 (Tex. Crim. App. 1982) ("When a trial court's ruling on the admission of evidence is correct, although giving a wrong or insufficient reason, this Court will not reverse if the evidence is admissible for any reason.") (citations omitted).

Nevertheless, the record does not show that Exhibit 21 was admitted into evidence. When Avila objected, the trial court carefully announced that "The exhibit is *received* as a court exhibit at this point and may be subject to substantial redactions before being published before the jury in its entirety" (emphasis added). Nothing in the record reveals that Exhibit 21 was redacted, published to the jury, or sent to the

jury as an admitted trial exhibit in any form. The reporter's record, in listing the admitted exhibits, contains only a blank where the page and line reference for Exhibit 21 would be had it been admitted. Finally, relative to Exhibit 21, the trial court later instructed the jury that "the [expert] witness is permitted to testify as an expert, having reviewed certain documents, but those documents are not available for your consideration."

We conclude that Avila has not shown that the trial court abused its discretion by admitting Exhibit 21, because the record does not show that Exhibit 21 was admitted into evidence. Further, Avila makes no effort to establish harm from any hearsay statements in Exhibit 21 not subject to a hearsay exception. The first part of Avila's second issue is overruled.

## IV.  AN EXPERT MAY BASE OPINIONS ON INFORMATION CONTAINING HEARSAY

Avila contends that Dr. Doskey should not have been allowed to review the therapy records in Exhibit No. 21 and then testify about the trauma signs the child and her mother communicated to the therapist along with the therapist's recording of their trauma symptomology scores. Avila's argument is without merit.

### A. Standard of Review and Applicable Law

Experts may properly consider materials in forming their opinions, whether or not such materials are admitted into evidence and whether or not the materials might contain hearsay, so long as they are of the type experts in the same field commonly rely upon. TEX. R. EVID. 703, 705. More specifically, expert witnesses

may base their opinions on facts or data which are inadmissible, if such information is commonly relied upon by experts within that same field; and the trial court will examine the basis for the expert's opinion and determine whether disclosure to the jury of such facts or data would be more prejudicial than probative. *Joiner v. State*, 825 S.W.2d 701, 707-08 (Tex. Crim. App. 1992).

We review a trial court's decision to admit or exclude scientific expert testimony under an abuse of discretion standard. *Sexton v. State*, 93 S.W.3d 96, 99 (Tex. Crim. App. 2002). If the trial court's ruling is within the zone of reasonable disagreement, then the trial court's ruling will be upheld. *Id.* "A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." TEX. R. EVID. 702.

**B. The Trial Court Did Not Err in Permitting the Expert's Testimony**

The State's psychologist Dr. Doskey reviewed the therapy records contained within Exhibit 21 and testified about how she used those therapy records to form her own expert opinions. This is a permissible and anticipated scenario under the rules of evidence and case law. TEX. R. EVID. 703; *Gharda USA, Inc. v. Control Solutions, Inc.*, 464 S.W.3d 338, 352 (Tex. 2015) ("No rule prohibits experts from using other experts' opinions to formulate new opinions based on their own expertise. In fact, Texas Rule of Evidence 703 and our prior cases contemplate exactly such an

arrangement."); *Anderson v. Gonzalez*, 315 S.W.3d 582, 587 (Tex. App.—Eastland 2010, no pet.) ("An expert may rely on the opinions of other individuals who have rendered reports or diagnoses.") (citations omitted).

In accordance with the rules governing expert testimony, the trial court did not abuse its discretion in permitting Dr. Doskey to testify about the bases for her opinions, including her review of the therapy records in Exhibit 21. Because the trial court did not abuse its discretion in the admission of Dr. Doskey's testimony based on the CAC therapy records, we overrule the second part of Avila's second issue.

## V. THE TRIAL COURT DID NOT IMPROPERLY LIMIT MITIGATION TESTIMONY ABOUT AVILA'S IMMIGRATION STATUS OR FINANCIAL SUPPORT

In his third issue, Avila contends the trial court committed an abuse of discretion in preventing Avila from offering mitigation evidence on whether the family's apartment was furnished or his immigration status. During the punishment phase, defense counsel questioned Avila about whether the family's apartment was furnished. The trial judge stopped the questioning and excused the jury, assuming that the line of questioning was improperly aimed at exploring the existence of security cameras and by extension Avila's innocence at the punishment phase. The trial court further limited questions about Avila's immigration status and whether he was subject to an immigration hold or deportation. Avila argues on appeal that it was error for the court to limit his mitigation evidence.

## A. Standard of Review and Applicable Law

The Texas Rules of Appellate Procedure set out two appellate standards of review that may apply in a criminal case, one for constitutional errors and the second for other errors. TEX. R. APP. P. 44.2(a); 44.2(b). Any non-constitutional error that does not affect substantial rights must be disregarded. TEX. R. APP. P. 44.2(b).

The exclusion of a defendant's evidence will be constitutional error only if the evidence forms such a vital portion of the case that exclusion effectively precludes the defendant from presenting a defense. *Potier v. State*, 68 S.W.3d 657, 659, 665 (Tex. Crim. App. 2002). Here, Avila complains not that he was barred from presenting mitigation evidence at the punishment phase, but only that he was not permitted to adduce specific evidence of his financial support of his family and his immigration status. Because Avila does not raise a complaint of constitutional dimension, we must disregard any error that does not affect his substantial rights. TEX. R. APP. P. 44.2(b). A substantial right is not affected, and the error is harmless if, after reviewing the entire record, the appellate court determines the error did not influence, or had only a slight influence, on the trial outcome. *Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002); *Montez v. State*, 975 S.W.2d 370, 373 (Tex. App.—Dallas 1998, no pet.).

Avila's citation to *Issa v. State*, 826 S.W.2d 159, 160-61 (Tex. Crim. App. 1992) (per curiam) is far wide of the mark. In that case, the trial court announced its sentence immediately after adjudicating the defendant's guilt for violating his

–13–

probation. The defendant in *Issa* was never afforded a punishment hearing after the adjudication of guilt, and the trial court deprived the defendant of the opportunity to present any mitigation evidence whatsoever. *Id.* Here, Avila was afforded a separate punishment phase and testified before the jury to present mitigation evidence.

**B. The Trial Court's Limits on Questions Relating to Avila's Financial Support of the Mother and Child Were Not Error**

Avila's argument that he was denied the opportunity to present mitigation evidence is contrary to the record. Avila acknowledges that the trial court permitted the admission of evidence showing that he paid to bring the child and her mother from the family's native country of Honduras, that he provided financial support for the child and her mother in the United States, and that he personally installed security cameras at the apartment they all lived in to increase security.

The trial court was entitled to infer that further questioning about the furnishing of the apartment may develop into an attempt to relitigate the issue of security cameras and whether their footage would show Avila's innocence. Importantly, "at the punishment stage of a criminal trial, evidence is not admissible for the purpose of relitigating the defendant's guilt." *McGee v. State*, 233 S.W.3d 315, 318 (Tex. Crim. App. 2007). Avila nonetheless did actually testify during the punishment phase that he was innocent of the crime the jury had already convicted him of. The trial court's ruling was not error, and further, Avila was not deprived of the opportunity to present mitigation evidence.

–14–

## C. The Trial Court Did not Err in Limiting Questions about Avila's Immigration Status

Avila also complains that the trial court improperly halted testimony about his citizenship status. Avila's counsel attempted to explore immigration status when he asked Avila if he had ever been sent to immigration. The State objected as to relevance and the trial court instructed the jury that a person's nationality has no bearing on the punishment phase. During a break, Avila's counsel explained he was attempting to show the jury that Avila had the ability to flee the country but elected not to. The trial court observed:

> I think we can -- it can be done a whole lot more direct without overemphasizing the history of bonds and immigration proceedings. I think is that if [Appellant] was at liberty, had the opportunity to leave -- to flee and did not, that's perfectly good evidence in my mind. Admissible. All the other stuff, I don't think is appropriate. Because, obviously, the State would not be permitted to try to punish -- seek harsher punishment for somebody not a US citizen or not lawfully in this country. It is the offense for which the jury has found him guilty that they're supposed to set punishment, not whether they like the cut of his hair or not.

Avila's counsel responded "I fully understand that" and the court stated "Well, I'm telling you, my friend, I'm limited you to that. If you can put it in one or two questions, do it. If you try to go further, I'm gonna be stopping it." Avila's counsel appeared to agree with this direct approach and responded, "It could be done real easy with two direct questions, but I've been admonished."

The record reflects that Avila later testified in response to direct questions that, indeed, he had been released from incarceration and was free for almost three

years before the criminal trial and that Avila did not leave the country or attempt to avoid his criminal trial.  Here is the key testimony:

> Q   Very simply. You were free for most – for almost three years?
> A   Yes.
> Q   And you did not leave the country or attempt to avoid these proceedings?
> A   No.

Immediately after this exchange, Avila's counsel stated, "Nothing further, Your Honor."  Avila's counsel never made a record of any additional questions he wished to ask or Avila's anticipated testimony in response.

On appeal, Avila asserts that the trial court's statement that Avila's counsel should proceed with "one or two questions" in order to establish that "he could have fled to Honduras or some other country and avoided prosecution" somehow limited his counsel's ability to present "a fuller picture of his character."  But with no record of any supplemental questions Avila's counsel ever actually proffered or even a reasonably specific summary of the additional evidence he would have adduced at the sentencing stage, the trial court was never presented with additional questions or the related evidence to consider and rule upon.  TEX. R. EVID. 103(a)(2); TEX. R. APP. P. 33.1(a); *Mays v. State*, 285 S.W.3d 884, 890 (Tex. Crim. App. 2009) (holding no alleged error was preserved for appeal where defendant's counsel failed "to proffer, with some degree of specificity, the substantive evidence he intended to present").

There can be a substantial risk of unfair prejudice inherent in the admission of collateral evidence on an accused's immigration status. *See, e.g. TXI Transp. Co. v. Hughes*, 306 S.W.3d 230, 241–42, 244 (Tex. 2010) (holding evidence of immigration status unrelated to merits of claims was not admissible and, citing cases from across the country, observing "[e]ven in instances where immigration status may have limited probative value as to credibility, courts have held that such evidence is properly excluded for undue prejudice under Rule 403.") (citations omitted).

In the present case, the trial court was aware of this potential for unfair prejudice against Avila. Immediately after Avila's counsel introduced the topic of Avila being "sent to immigration," the trial court sustained the State's relevance objection. The court then instructed the jury that, irrespective of any party's citizenship, wealth or poverty, primary language, or length of time in the U.S., the law expects all parties to be treated equally under the law.

The trial court properly exercised its discretion in limiting testimony relating to Avila's immigration status. *Cf. Irby v. State*, 327 S.W.3d 138, 152 (Tex. Crim. App. 2010) (rejecting the argument that witnesses who may "be in the country illegally, or have some other 'vulnerable status' are automatically subject to cross-examination with that status regardless of its lack of relevance to the testimony of that witness.").

Avila was permitted to testify to the evidence he wanted the jury to hear—that he had not used his foreign citizenship to flee the United States to avoid trial.

After reviewing the entire record, this Court determines that any error did not influence, or had only a slight influence, on the punishment phase outcome. Avila's third issue is overruled.

## VI. MODIFICATION OF COSTS AWARDED AGAINST AVILA

In a cross-issue, the State argues that mandatory court costs should be correctly reflected in the judgment. *See* TEX. CODE CRIM. PROC. art. 42.16. The record reflects that the District Clerk's bill of costs assessed $451, although the trial court's judgment awarded only $386.

We have authority to modify the judgment to make the record speak the truth when we have the necessary information before us to do so. TEX. R. APP. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27–28 (Tex. Crim. App. 1993); *French v. State*, 830 S.W.2d 607, 609 (Tex. Crim. App. 1992) (adopting the reasoning in *Asberry v. State*, 813 S.W.2d 526, 529–30 (Tex. App.—Dallas 1991, pet. ref'd) (*en banc*)). We decide the State's cross-issue in its favor and modify the judgment to reflect that a total of $451 in costs is awarded against Avila.

## VII. CONCLUSION

We overrule all of Avila's live issues. We sustain the State's cross-issue on costs and modify the judgment to award costs against Avila in the total amount of $451.00. As modified, we affirm the trial court's judgment.

The trial court is directed to prepare a corrected judgment that reflects the modifications made in this Court's opinion and judgment. *See Shumate v. State*, 649 S.W.3d 240, 245–46 (Tex. App.—Dallas 2021, no pet.).


220727f.u05
Do Not Publish
TEX. R. APP. P. 47

/Emily Miskel/
EMILY MISKEL
JUSTICE



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

JUAN FRANCISCO AVILA,
Appellant

No. 05-22-00727-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District
Court No. 1, Dallas County, Texas
Trial Court Cause No. F-1958617-H.
Opinion delivered by Justice Miskel.
Justices Goldstein and Garcia
participating.

Based on the Court's opinion of this date, the judgment of the trial court is
**MODIFIED** as follows:

The total costs awarded against Appellant Juan Francisco Avila are modified to the
new total amount of $451.00.

As **REFORMED**, the judgment is **AFFIRMED**.

Judgment entered this 6th day of February, 2024.